MYER *vs.* CRISPELL and others.

NEWKIRK *vs.* CRISPELL and others.

Although the law does not imperatively require that a school district meeting shall be held within the bounds of the district, it is eminently fitting that it should be so held.

Where defendants justified the taking of property on a tax warrant issued by them as trustees of a school district, and it was objected that they were not legally trustees, because chosen at a meeting of the inhabitants of the district, held outside of the district; there being no evidence of abuse, nor that the place of meeting was an inconvenient or inaccessible place; nor that any objection was taken, at the time, on that account; nor that the inhabitants were not fully notified and represented at the meeting; nor that any action was ever had to oust the trustees on that account; but on the contrary, it appeared that they subsequently acted, without objection, as trustees, and sufficiently so to constitute them officers *de facto; it was held* the objection was unavailable.

Where a tax was voted at a school meeting held in the district, adjourned from a previous meeting held outside of the district, it not appearing that at the original meeting any inhabitant was not notified, or complained, then or afterwards, of the irregularity; or that there was any inhabitant absent from the adjourned meeting; and the evidence showing that it was a meeting of the freeholders and inhabitants of the district; and there being no proof of any objection or complaint of the irregularity of the proceedings having been made, at the second meeting; *it was held* that the court might presume a waiver of the irregularity, if it were such, and a unanimous assent to the regularity of the adjourned meeting.

Where a school district voted " to raise by tax on the district a sum which, together with the amount that should arise from the sale of a school house in district No. 4, should amount to the sum of $315," under which resolution the trustees raised by tax the whole sum of $315, not having sold the school house, in consequence of a doubt of their right to do so; *Held* that the fair construction of the resolution was, that in the contingency of nothing being realized from the sale of the school house, the trustees were authorized to raise the entire amount of $315, by tax; and that the amount to be raised was sufficiently *definite* to satisfy the law.

Where M. was an actual resident of school district No. 4 and his homestead farm lay in that district, but he improved and occupied a lot of 37 acres lying in district No. 6, which lot was not a part of his farm, nor attached to it, nor adjoining it, *Held* that M. was a taxable inhabitant of district No. 6, and that the 37 acres were properly taxed for school purposes, in that district.

THESE are appeals by the plaintiffs from judgments of the county court of Ulster county, reversing judgments rendered for the plaintiffs respectively, before a justice of the peace. The suits were brought to recover the value of wagons sold by order of the defendants as trustees of school district No. 6, in the town of Hurley, for the non-payment of a tax imposed for the erection of a new school house. The plaintiffs succeeded before the justice, on account of alleged defects and errors in the proceedings which led to the imposition of the tax. The facts, so far as they are important to an understanding of the questions presented, are sufficiently detailed in the opinion of the court.

*T. R. Westbrook,* for the plaintiff.

*C. B. Cochrane,* for the defendant.

*By the Court,* HOGEBOOM, J. The plaintiff assails the validity of the defendant's proceedings on two grounds: 1. That the defendants were not trustees. 2. That the tax was unlawfully laid, and principally for the reason that a larger tax was collected than was authorized by a vote of the district. In Myer's case a third ground is added, that the land on account of which the tax was imposed, was not taxable in the district in which the school house was situated.

1. It is claimed that the defendants were not legally trustees, because chosen at a meeting of the inhabitants of the district, held outside of the district, and in district No. 4. The law does not imperatively require the meeting to be held within the bounds of the district, although it is eminently fitting that it should be so. There is no evidence of abuse, nor that it was an inconvenient or inaccessible place; nor that any objection was taken, at the time, on this account; nor that the inhabitants were not fully notified and represented at that meeting; nor that any action was ever had to oust the trustees on that account. On the contrary it appears that

they subsequently acted without objection as trustees, and I think sufficiently so to constitute them officers *de facto*. If so, the objection is unavailable. (*Stevens* v. *Newcomb*, 4 *Denio*, 438. *Reynolds* v. *Moore*, 9 *Wend.* 35.)

2. It is alleged that the tax was illegally imposed. 1st. Because voted at a meeting held in the district, adjourned from a previous meeting, (the same at which the trustees were appointed,) held outside of the district and in district No 4. As before stated, it does not appear that at the original meeting any single inhabitant was not notified, or complained, then or afterwards, of the irregularity; or that there was any absentee from the adjourned meeting held within the bounds of the district; and by the evidence it appears to have been a meeting of the freeholders and inhabitants of the district. Further, there is no evidence of any objection or complaint of the irregularity of the proceedings at the second meeting, and we may therefore presume a waiver of the irregularity (if it be one) and a unanimous assent to the regularity of the adjourned meeting. I think the objection should be treated as untenable. 2d. And principally, it is alleged that the tax was illegally imposed, because the vote of the inhabitants was "to raise by tax on the district a sum which together with the amount that shall arise from the sale of a school house in district No. 4, shall amount to the sum of $315;" whereas the sum actually raised by tax under the direction of the trustees was (without reference to the sale or value of the school house in district No. 4,) $315. The answer made to this on the part of the defendants is, that the school house in No. 4 was never in fact sold; that it was illegal to sell it, (1 *R. S. 4th ed.* 892, § 87,) and that the meeting in fact meant to authorize and did authorize the raising of the entire amount of $315 if no available means were realized from the sale of the school house in No. 4.

Section 2 of chap. 382 of the Laws of 1849, (1 *R. S. 4th ed.* 892, *sec.* 87) provides for only two cases: 1st. For that of two or more districts *consolidated* into one; and 2d. For

Myer *v.* Crispell.

that where a district is *annulled.* The present case is not em-
braced within either of those classes. It is the case of a *new*
district, formed from parts of two others—the old districts
still remaining and requiring of course for their use the school
houses already built in them respectively. We have not been
referred to any other provision of the school law meeting the
case; and if there is none, I do not see that there was any
power to make sale of the school house in No. 4. At any rate,
either because doubt existed as to the power, or for some other
reason, nothing was realized from that source. No amount, in
the language of the resolution of the district meeting, did
"arise from the sale of a school house in district No. 4." I
think therefore the fair construction of the resolution, in that
contingency, is, that the trustees were authorized to raise the
entire amount of three hundred and fifteen dollars by tax,
and the amount to be raised was sufficiently *definite* to satisfy
the law. A similar construction of the law has been given in
several adjudicated cases nearly parallel to this. (*Trumbull*
v. *White*, 5 *Hill*, 46. *Ackerman* v. *Vail*, 4 *Denio*, 298. *See
also Williams* v. *Larkin*, 3 *Denio*, 115.) I lay no stress, in
determining this question, upon a remark made at the meet-
ing in response to an inquiry upon that subject, that if the
school house in No. 4 could not be sold, the entire amount
would be raised by tax upon the district. However much we
may be convinced by such a circumstance that the meeting
comprehended the practical effect of the resolution, we must
nevertheless interpret it by its own terms.

3. The remaining objection applies only to the case of Myer.
It is that the 37 acres for which he was taxed, though situated
within the bounds of No. 6, formed part of his farm, the dwell-
ing house upon which and in which he resided, being situated
within and taxable in district No. 4.

The lot in question was occupied, improved and cultivated
by the plaintiff in connection with his homestead farm in No. 6,
but did not adjoin any part of said farm, nor was it directly op-
posite thereto, but was on the opposite side of the Esopus creek,

and at its nearest approach to said farm was about 80 yards distant from a point directly opposite to the nearest point or corner thereof on the other side of the creek. It had no house upon the same, and had of course no actual resident thereon. Sec. 87 of chap. 480 of the laws of 1847 (1 *R. S. 4th ed. p.* 899,) provides that every person owning or holding real property in any school district who shall improve and occupy the same by his *agent or servant* shall be considered a taxable inhabitant of such district, in respect to the liability of such property to taxation, in the same manner as if he resided therein. Section 89 provides for the taxation of real estate as non-resident lands, where it is not occupied and improved by the *owner, his servant or agent,* and shall not be possessed by any tenant. Sec. 85 directs the trustees to apportion the tax upon all the taxable inhabitants, and upon all real estate lying within the boundaries of such district, the owners of which shall be non-residents. I am of opinion that the plaintiff Meyer was a taxable inhabitant of district No. 6, within the meaning of the foregoing sections. He was, it is true, an actual resident of No. 4, and his farm lay in that district; but he improved and occupied land (this lot) in district No, 6; not literally, so far as the case shows, *by his agent or servant,* but in the same way in substance and effect. I think the word "owner" was inadvertently left out of section 87. It is contained in section 89, and if the plaintiff is not taxable in district No. 6 for this land, I think he is not taxable at all. He is not taxable in district No. 4, because the 37 acres are not, correctly speaking, a part of his farm—not attached to it, nor adjoining it; nor are the two cut or *intersected* by the boundaries of the district. (1 *R. S.* 476, §§ 76, 82.) If land situated like this, improved or occupied by a servant or agent, would make the owner a taxable inhabitant for the purposes of the law, *a fortiori* would it seem to do so, if occupied or improved by the owner himself. Regarding the case as substantially within section 87, if not literally so, I think the 37

acres were properly taxed for school purposes in district No. 6, and therefore that this objection also fails.

If it were a case of doubt, I do not know but we ought to solve the doubt in favor of public officers who perform an important public service at a trivial rate of compensation, wholly disproportioned to the risk and labor incurred.

The judgment of the county court should be affirmed.

[Albany General Term, September 6, 1858.  *Wright, Gould* and *Hogeboom,* Justices.]